[No. 67547-8-I.    Division One.    July 9, 2012.]

INDIGO REAL ESTATE SERVICES, INC., *Respondent*, v. TINA L. WADSWORTH, *Appellant*.

*Harry L. Johnsen III*, for appellant.

*Michael S. Walsh* (of *Puckett & Redford PLLC*), for respondent.

¶1 DWYER, J. — Pursuant to the United States Department of Housing and Urban Development's (HUD) "section

8" program, a landlord may not terminate the tenancy of a section 8 tenant during the term of the lease without good cause for doing so. The protections afforded such tenants are fully applicable when a landlord seeks to terminate the tenancy by way of our state's unlawful detainer statute, chapter 59.12 RCW—having accepted the substantial financial benefits of the federal section 8 program, the landlord is bound to comply with this program's rules and regulations in any such action. Accordingly, a section 8 tenant may not be found to have unlawfully detained the premises absent a determination that the tenant's conduct resulted in good cause to terminate the tenancy.

¶2 Here, Tina Wadsworth, a section 8 tenant, was served by her landlord with a 10-day notice to comply or vacate based upon the presence of a plywood panel on the balcony of her apartment unit. When Wadsworth failed to remove the plywood panel within the 10 days allotted, the landlord served her with a complaint for unlawful detainer. At the show cause hearing that followed, the trial court ruled that Wadsworth had unlawfully detained the premises without first determining whether her conduct gave rise to good cause to terminate her tenancy. Because such a determination was required, we reverse and remand for further proceedings.

I

¶3 In January 2011, Tina Wadsworth leased an apartment at the Meadow Wood Townhomes project from Indigo Real Estate Services Inc. Wadsworth qualified for rental assistance through section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, and Indigo agreed to accept her as a section 8 tenant.

¶4 Pursuant to the federal regulations governing the section 8 program, the standard form lease entered into by Indigo and Wadsworth was supplemented by an addendum containing several additional provisions. The addendum

provided that "[t]he Landlord shall not terminate the Lease except for . . . [m]aterial noncompliance with the lease." The addendum further specified that prior to terminating the lease, the landlord must provide to the tenant a written notice stating the date of termination, explaining the reasons for the termination, and notifying the tenant of his or her right to present defenses in a court action.

¶5 On May 17, 2011, Indigo served Wadsworth with a written 10-day notice to comply with the lease or quit the premises. The notice alleged several violations of a community rule requiring that "balconies and patios shall be kept neat and clean at all times." The notice stated that a plywood panel along the inside of Wadsworth's deck railing violated this regulation. Wadsworth was directed to remove the plywood and to take action to prevent materials from falling through her deck within 10 days or to surrender possession of the premises. Wadsworth was informed that she had the right to "defend this action in a court of law" and the right "to discuss this termination with the landlord" within the 10-day period.

¶6 Wadsworth thereafter cleaned the deck and covered the decking with a plastic tarp. She conveyed to Indigo several reasons for the presence of the plywood; however, Indigo refused to exempt the plywood panel from the 10-day notice requirement. Wadsworth removed the plywood 14 days after receiving the notice.

¶7 On June 9, 2011, Indigo served Wadsworth with a complaint for unlawful detainer. The complaint prayed for the issuance of a writ of restitution and the "forfeiture of [Wadsworth's] tenancy." Wadsworth's failure to comply with the May 17 notice was specified as the sole ground for termination. The complaint indicated that a copy of Wadsworth's rental agreement had been filed with the complaint; however, only the standard form lease was attached. The addendum was not filed or served with the complaint.

¶8 A show cause hearing was held on July 8, 2011. At the hearing, Indigo stipulated that Wadsworth's four-day delay in removing the plywood panel from her balcony was the sole basis for eviction.[1] Wadsworth argued that pursuant to federal law governing section 8 leases, serious or repeated violations of such a lease are required to justify the termination of the tenancy. In response, Indigo argued that the protections of the addendum are applicable only where a landlord seeks to terminate the lease at the end of a rental period. Indigo did not assert that the presence of the plywood panel was a substantial breach of a lease covenant.

¶9 The trial court determined that Wadsworth's admitted failure to remove the plywood until four days after the 10-day deadline was dispositive. The court found that there were no genuine issues of material fact and, therefore, that Wadsworth was not entitled to a trial. Determining that Wadsworth was "guilty of unlawful detainer," the trial court then entered an order directing the clerk of the court to issue a writ of restitution for Wadsworth's eviction. The order stated that "the tenancy of the defendant(s) in the premises is hereby terminated." In addition, the court filed a judgment awarding to Indigo its attorney fees and costs.

¶10 Following the show cause hearing, Wadsworth discovered that Indigo had not attached the entire lease as represented in the complaint. Wadsworth thereafter moved for reconsideration based upon the existence of the lease addendum. She argued that pursuant to the addendum, her eviction could not properly be based upon a single, minor violation of the lease. Indigo admitted that the addendum was part of the lease but argued that its provisions were inapplicable where a tenant is evicted pursuant to Washington's unlawful detainer statute.

---

[1] There was some dispute regarding the date that Wadsworth removed the plywood panel from her balcony. For purposes of the show cause hearing, however, Indigo stipulated that Wadsworth had removed the plywood 14 days after receiving notice of the violation.

¶11 The trial court agreed with Indigo that the protections of the addendum did not apply:

In my judgment, the addendum to the lease does grant specific rights to all parties. But [it] does not supersede [chapter] 59.12 [RCW] in the unlawful detainer statute. They are, I believe, two separate ways of dealing with a situation. The situation that we have here [is] a sound unlawful detainer[,] not a basis for termination as contemplated by the addendum.

The trial court then denied Wadsworth's motion for reconsideration and awarded to Indigo additional attorney fees for defending the motion. The writ of restitution was executed, and Wadsworth was evicted from her apartment.

¶12 Wadsworth appeals.

II

¶13 Wadsworth contends that, because both federal law and the lease addendum prohibit the termination of a tenancy in the absence of a section 8 tenant's material noncompliance with the lease, the trial court erred by determining that she had unlawfully detained the premises without first determining whether her conduct constituted material noncompliance. We agree.

¶14 To the extent that the parties' arguments before the trial court were based upon written materials only, this court stands in the same position as the trial court and reviews the record de novo. *Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 387, 109 P.3d 422 (2005). We review questions of law de novo. *Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

¶15 As an initial matter, Indigo admits on appeal that Wadsworth's rent was subsidized through HUD's section 8 program. Wadsworth's rent was subsidized through a project-based voucher program, administered by the Bellingham/Whatcom County Housing Authorities. *See* 42 U.S.C. § 1437f; 24 C.F.R. pt. 983. Pursuant to this program,

a section 8 tenant pays only a portion of the fair market rent for a unit, 24 C.F.R. § 983.353; the remainder of the full rent payment is conveyed directly to the owner by the public housing authority. 24 C.F.R. § 983.301. Accordingly, through its participation in this program, Indigo was assured of a dependable source of regular rent payments at fair market value.[2]

¶16 Indigo similarly concedes that the section 8 program imposes significant requirements on participating landlords. Federal regulations stipulate that the initial term of a section 8 tenancy must be for a minimum of one year. 24 C.F.R. § 983.256(f). The landlord may not terminate the tenancy "[d]uring the term of the lease" except on the following grounds:

> (1) Serious violation (including but not limited to failure to pay rent or other amounts due under the lease) or repeated violation of the terms and conditions of the lease;
>
> (2) Violation of federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the premises; or
>
> (3) Other good cause.

24 C.F.R. § 982.310(a).[3] "Other good cause" for termination is defined to include the "[f]ailure by the family to accept the offer of a new lease or revision" and a "family history of disturbance of neighbors or destruction of property, or of

---

[2] The full rent payment to the owner is the lesser of (1) an amount determined by the public housing authority, not to exceed 110 percent of the applicable fair market rent, (2) the reasonable rent, or (3) the rent requested by the owner. 24 C.F.R. § 983.301. The reasonable rent of a contract unit is determined by comparison to rent for other comparable unassisted units. 24 C.F.R. § 983.303(c)(1).

[3] Evidence of criminal activity on or near the premises may also be the basis for termination by the landlord. 24 C.F.R. § 982.310(c). Indigo does not assert criminal activity as a basis for Wadsworth's eviction.

living or housekeeping habits resulting in damage to the unit or premises." 24 C.F.R. § 982.310(d).[4]

¶17 Moreover, every section 8 lease must include a HUD-required tenancy addendum. This addendum must include, word-for-word, all provisions required by HUD. 24 C.F.R. § 983.256. Here, the addendum to the lease entered into by Wadsworth and Indigo provides that "[t]he Landlord shall not terminate the Lease except for . . . [m]aterial noncompliance with the lease."[5] Material noncompliance is defined in the addendum as:

a. One or more substantial violations of the Lease, or

b. Repeated minor violations of the Lease which disrupt the livability of the project, adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the lease premises and retained facilities, interfere with the management of the project or have an adverse financial effect on the project.[6]

The protections of the tenancy addendum are expressly enforceable against the owner or landlord. 24 C.F.R. § 982-.308(a); 24 C.F.R. § 983.256(a).[7] As Indigo again agrees, "the

---

[4] Because Wadsworth's rental was subsidized by a "project-based" voucher program, Indigo was not entitled to terminate her tenancy in order to repurpose the unit for personal or family use, or due to a business or economic reason, as is permitted where the landlord participates in a "tenant-based" voucher program. 24 C.F.R. § 983.257(a).

[5] The addendum also specifies that a lease may be terminated for a "[m]aterial failure to carry out obligations under any State landlord and tenant act," or for "[o]ther good cause." In order for a tenant's lease to be terminated for "[o]ther good cause," the addendum stipulates that the landlord must give prior notice that the tenant's conduct "shall henceforth constitute a basis for termination of the lease." In a termination for other good cause, a notice of lease termination must be received by the tenant at least 30 days prior to the date of lease termination. Indigo does not contend that these conditions were satisfied.

[6] The addendum further provides that material noncompliance includes the nonpayment of rent and any criminal activity on the premises. Neither of these circumstances is asserted by Indigo.

[7] In addition, Indigo admits that it received federal tax benefits based upon its participation in the Low-Income Housing Tax Credit program, which is designed to promote the development of affordable rental housing for low income tenants. See 26 U.S.C. § 42. In order to claim this tax credit, Indigo was required to enter

CFR 982 Addendum is part of the Lease and so governs the parties[b] relationship." Br. of Resp't at 1 n.2.

¶18 Nevertheless, in both the proceedings before the trial court and now on appeal, Indigo asserts that neither federal law nor the provisions of the section 8 addendum apply where, pursuant to our state's unlawful detainer statute, a landlord has given a tenant notice to comply with a lease provision or vacate. The trial court agreed with Indigo that Wadsworth's late compliance with the notice to comply or vacate was sufficient to support Indigo's unlawful detainer action. The trial court erred by so ruling.

¶19 Because this case involves a residential tenancy, it is governed by the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW. *Leda v. Whisnand*, 150 Wn. App. 69, 77, 207 P.3d 468 (2009). However, the procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, "apply to the extent they are not supplanted by those found in the [RLTA]." *Pleasant*, 126 Wn. App. at 390.

¶20 Our state's unlawful detainer statute enumerates seven different ways that a tenant of real property may unlawfully detain the premises. RCW 59.12.030. Of relevance here, a tenant is in the status of unlawful detainer where (1) the tenant has breached a condition of the lease agreement; (2) written notice is served on the tenant, informing the tenant that the condition must be performed or the property surrendered within 10 days of service; (3) the tenant fails to comply with the condition within the

---

into an "extended low-income housing commitment" with the Washington State Housing Finance Commission. 26 U.S.C. § 42(h)(6)(B). Such agreements stipulate that a landlord may not evict or terminate the tenancy of a low-income tenant, other than for good cause. 26 U.S.C. § 42(h)(6)(B)(i), (E)(ii). The Internal Revenue Service has explained that these protections apply even at the end of a lease period; when a lease term expires, the landlord may not fail to renew the lease except for good cause. *See* Rev. Rul. 2004-82, 2004-2 C.B. 350; *see also Carter v. Md. Mgmt. Co.*, 377 Md. 596, 614, 835 A.2d 158 (2003) ("[A] voucher program tenant may not be evicted by a landlord who has qualified for a § 42 tax credit and is continuing to receive rent subsidies, either during the term of the lease or at the expiration of that term, except for conduct or circumstances that qualify under the Federal law as good cause.").

allotted 10 days; and (4) the tenant continues in possession of the property. RCW 59.12.030.

¶21 Once a tenant is in the status of unlawful detainer, the landlord may commence an unlawful detainer action by serving a summons and complaint. RCW 59.12-.070. In addition, the landlord may, at the time the summons and complaint are served (or at any time afterward), seek to obtain possession of the property pursuant to a writ of restitution. RCW 59.12.090. The RLTA requires a landlord who wishes to obtain a writ of restitution to note the matter for a show cause hearing. RCW 59.18.370. "Show cause hearings are summary proceedings to determine the issue of possession pending a lawsuit." *Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000). It is the landlord's burden in an unlawful detainer action to prove, by a preponderance of the evidence, the right to possession of the premises. *Duprey v. Donahoe*, 52 Wn.2d 129, 135, 323 P.2d 903 (1958).

¶22 In addition, the trial court at a show cause hearing may grant other requested relief if there are no substantial issues of material fact. RCW 59.18.380. Although a show cause hearing "is not the final determination of the rights of the parties in an unlawful detainer action," *Carlstrom*, 98 Wn. App. at 788, the necessity of a trial is frequently determined at such hearings, which "routinely constitute the only opportunity [for a tenant] to present any evidence." *Leda*, 150 Wn. App. at 82. However, as with any suit, where the written or oral presentations of the parties "disclose a material issue of fact, the issue must be resolved at trial." RCW 59.12.130; *Pleasant*, 126 Wn. App. at 392.

¶23 In general, the tenant's breach of any covenant is ground for notice to comply or vacate. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.80, at 447-48 (2d ed. 2004). However, "[l]eases are contracts, as well as conveyances." *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 272, 711 P.2d 361 (1985). It is axiomatic that the rights

and obligations of the parties to a contract are defined by the provisions of that document. Consequently, where a lease provides the tenant with greater protection than he or she would receive under the unlawful detainer statute, the landlord must comply with the lease in any eviction action. *Cmty. Invs., Ltd. v. Safeway Stores, Inc.*, 36 Wn. App. 34, 36-37, 671 P.2d 289 (1983). Thus, in *Community Investments*, we determined that where the parties' lease contained a provision requiring that a tenant be allowed 20 days to cure a default (and not the 10 days required by the statute), the provisions of the lease must prevail. 36 Wn. App. at 36-37.

¶24 Similarly, where a landlord has accepted the substantial financial benefits of the federal section 8 program, the landlord must abide by the rules of that program in any unlawful detainer action. Indeed, we have previously noted that the protections of the United States Housing Act apply during an unlawful detainer action seeking to evict a section 8 tenant. In *Pleasant*, we explained that, because "[t]he United States Housing Act requires that the tenancies be terminated only for 'serious or repeated violation of the terms or conditions of the lease or for other good cause,'" the issue of whether these requirements are met cannot generally be summarily resolved at a show cause hearing. 126 Wn. App. at 393 (quoting former 42 U.S.C. § 1437d(*l*)(5) (2000)). Accordingly, we held, the matter must be set for trial. *Pleasant*, 126 Wn. App. at 393.

¶25 Courts in other jurisdictions have likewise concluded that landlords must comply with the provisions of the statutes and regulations governing section 8 tenancies. *See Sudersan v. Royal*, 386 N.J. Super. 246, 253-54, 900 A.2d 320 (2005); *1212 Grand Concourse LLC v. Ynguil*, 27 Misc. 3d 205, 211, 894 N.Y.S.2d 713 (N.Y. Civ. Ct. 2010). As the New York Court of Appeals has explained, "[s]ection 1437f restricts the ability of landlords receiving Section 8 subsidies to evict tenants . . . 'during the term of the lease . . . except for serious or repeated violation of the terms and conditions of

the lease, for violation of applicable Federal, State, or local law, or for other good cause.' " *Rosario v. Diagonal Realty, LLC*, 8 N.Y.3d 755, 762, 872 N.E.2d 860, 840 N.Y.S.2d 748 (2007) (quoting 42 U.S.C. § 1437f(d)(1)(B)(ii)). The Ninth Circuit has likewise determined that, "[b]y enacting the federal good cause requirement, [Congress] desired to maintain a uniform federal floor below which protections for tenants could not drop." *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1211 (9th Cir. 2009).

¶26 Indeed, where a landlord has not demonstrated material noncompliance with the lease, it cannot properly be said that a section 8 tenant has unlawfully detained the property at all. As Professor Stoebuck has explained, "One should think of 'unlawful detainer' as being a status in which a tenant is wrongfully occupying, *i.e.*, unlawfully detaining, the premises." 17 STOEBUCK & WEAVER, *supra*, § 6.80, at 440. Where a section 8 tenant has not committed a "[s]erious violation . . . or repeated violation of the terms and conditions of the lease," 24 C.F.R. § 982.310(a)(1), or otherwise engaged in conduct giving rise to good cause to terminate the tenancy, 24 C.F.R. § 982.310(d), such a tenant is entitled to remain in possession of the property. A tenant entitled to possession cannot wrongfully occupy the premises. 17 STOEBUCK & WEAVER, *supra*, § 6.80, at 440.

¶27 For all these reasons, the protections provided by the lease addendum and by federal law are properly considered as limitations to our state's unlawful detainer statute. Just as the parties to a lease may contract to allow additional time for compliance before a tenant may be found to have unlawfully detained the premises, *Cmty. Invs.*, 36 Wn. App. at 36-37, so may a lease require something more than an immaterial breach of a lease provision to support such a determination. Similarly, where a landlord has accepted the substantial financial benefits that accompany participation in the section 8 program, a higher bar to a finding of wrongful occupation is imposed.

¶28 Accordingly, in order to determine if Wadsworth had unlawfully detained the premises, the trial court was required to determine whether her failure to comply with Indigo's notice to remove the plywood panel within 10 days constituted "material noncompliance" with the terms of the lease. The court, however, did not reach this issue. Instead, the trial court determined that any right to such a determination is not implicated where a tenancy is terminated by operation of the unlawful detainer statute. Based upon this reasoning, the court found that there were no issues of material fact entitling Wadsworth to a trial and concluded that, because Wadsworth had failed to comply with Indigo's notice, she had unlawfully detained the premises. In so ruling, the court relied on two arguments, both reasserted by Indigo on appeal. Neither has merit.

¶29 Indigo first asserts that, because Wadsworth's tenancy was not terminated by Indigo but, rather, by the operation of the unlawful detainer statute, neither the provisions of the lease addendum nor federal law apply in the context of this statutory procedure. It is true that both Wadsworth's lease and federal law prohibit only the termination of a tenancy "by Landlord" or "owner." 24 C.F.R. § 982.310(a). However, Indigo cannot viably argue that this is not precisely what occurred in this instance.

¶30 Having served Wadsworth with a notice to comply or vacate, it was Indigo that determined that Wadsworth had failed to comply with the notice within the allotted time period. It was Indigo that then filed and served a complaint for unlawful detainer that explicitly sought to terminate Wadsworth's tenancy. *See* Clerk's Papers at 115 ("[P]laintiff prays . . . [f]or forfeiture of defendant(s) tenancy."). Indeed, Indigo was statutorily required to explain to Wadsworth in the summons that "[y]our landlord is asking the court to terminate your tenancy." RCW 59.18.365(3). Indigo was, of course, under no obligation to request that the court evict Wadsworth following her failure to comply with the notice. Because it was Indigo's calculated and deliberate conduct

that precipitated the termination of Wadsworth's tenancy, Indigo's argument that it was not the ultimate cause of this termination is unavailing. The fact that Indigo proceeded by way of the unlawful detainer statute is immaterial.

¶31 Indigo further asserts that "termination" is a term of art that refers only to a landlord's unilateral decision not to renew a lease or to extend a month-to-month tenancy. At the hearing on Wadsworth's motion for reconsideration, the trial court appeared to accept this argument, noting that Indigo's action constituted "a sound unlawful detainer[,] not a basis for termination as contemplated by the addendum." However, this interpretation of the term "termination" does not appear anywhere in the parties' lease and is contradicted by the express terms of federal law. The federal statute explicitly provides that the lease "shall provide that *during the term of the lease*, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease." 42 U.S.C. § 1437f(o)(7)(C) (emphasis added).[8] The HUD regulations likewise restrict the landlord's discretion to terminate the tenancy "[d]uring the term of the lease." 24 C.F.R. § 982.310(a).

¶32 Moreover, when Congress passed this statute, it could not have known how the 50 states might define the terms and procedures of their various landlord/tenant laws. Instead, Congress was entitled to expect that the word "termination" would be given its common meaning. Because the "termination" of a tenancy, as it is commonly understood, is not limited to a landlord's unilateral decision to not renew a lease or extend a month-to-month tenancy, Indigo's present contention is without merit.

¶33 The trial court erred by determining that Wadsworth had unlawfully detained the premises without first deter-

---

[8] Indigo cites to the section 8 regulations governing the conduct of landlords "[u]pon lease expiration" to support its interpretation of the term "termination." 24 C.F.R. § 983.257(b). However, Indigo fails to note that part (a) of this subsection explicitly incorporates the protections of 24 C.F.R. § 982.310(a), which applies to terminations "[d]uring the term of the lease."

mining that her conduct constituted material noncompliance supporting termination of her tenancy. Pursuant to the express terms of the lease, the court was required to determine whether Wadsworth's four-day delay in removing the plywood panel—the sole basis found by the court to justify her eviction—was either a "substantial violation" or a "repeated minor violation" of the lease. Absent proof of such a violation by a preponderance of the evidence, the issuance of the writ of restitution was improper. *Duprey*, 52 Wn.2d at 135. Moreover, where a section 8 tenant properly contests a landlord's allegation that the tenant's conduct constitutes material noncompliance with the lease, the tenant is generally entitled to a trial on that issue.[9] *Pleasant*, 126 Wn. App. at 393. Because the question of material noncompliance is "an inappropriate issue to summarily resolve," *Pleasant*, 126 Wn. App. at 393, the final determination of the parties' rights in this unlawful detainer action must be determined at trial.[10]

## III

¶34 Both parties request attorney fees on appeal. Because, however, no party has yet prevailed on the merits,

---

[9] We decline Wadsworth's invitation to hold that the four-day delay in removing the plywood panel cannot constitute material noncompliance as a matter of law. At the show cause hearing, Indigo's stipulation to the time and nature of Wadsworth's compliance was clearly contingent upon the trial court's acceptance of its legal argument. Accordingly, the extent and severity of Wadsworth's alleged breach was never fully litigated. This factual issue must be determined at trial.

[10] Because the trial court clearly erred for the reasons described, we need not determine whether the trial court also abused its discretion where, Wadsworth asserts, the court failed to weigh the equities in the case. This issue involves questions of fact that are not easily resolved on appeal. However, we note that a trial court clearly has discretion to resolve an unlawful detainer action on equitable grounds. Equitable defenses may be raised in an unlawful detainer action. *Josephinium Assocs. v. Kahli*, 111 Wn. App. 617, 624, 45 P.3d 627 (2002); *see also* RCW 59.18.380.

Similarly, we do not address Wadsworth's contention that the trial court erred by determining that Wadsworth had unlawfully detained the premises where Wadsworth presented evidence that the unlawful detainer action by Indigo was a "retaliatory action." RCW 59.18.240. We entrust resolution of these issues to the sound judgment of the trial court.

such an award is premature. *See Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 242, 189 P.3d 253 (2008).

¶35 Reversed and remanded.[11]

APPELWICK and LAU, JJ., concur.

---

[11] The trial court awarded attorney fees to Indigo at the show cause hearing and at the hearing on Wadsworth's motion for reconsideration. The court awarded these fees based upon the "prevailing party" provision of the lease. Given our decision in this appeal, there is not yet a prevailing party in this matter. Accordingly, we vacate the trial court's award of attorney fees.