# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MICHAEL S. KENNARD and BETTY S. KENNARD, husband and wife,

Appellants,

v.

CAPTAIN JACK JR.'S FAMILY ENTERTAINMENT CENTER, INC.; STACY STANG and MICHAEL STANG, wife and husband,

Respondents.

DIVISION ONE

No. 70038-3-I

UNPUBLISHED OPINION

FILED: July 21, 2014

DWYER, J.—Michael and Betty Kennard appeal the trial court's order denying a writ of restitution in an unlawful detainer proceeding involving commercial property. After a bench trial, the trial court concluded that the tenants were not in default due to unpaid rent because the parties agreed to modify provisions of the lease. The court's findings are supported by substantial evidence. We affirm the judgment and the award of attorney fees to the tenants under the lease.

I

In February 2012, Michael and Stacy Stang, owners of Captain Jack Jr.'s Family Entertainment Center, entered into a 5-year lease for commercial property owned by Michael and Betty Kennard (collectively, Kennard). The Stangs leased

the property in order to open a new business—a restaurant with a play area for children. Kennard's property was suitable with regard to size and location, but was previously used as warehouse space and required substantial modifications to prepare it to be used for the Stangs' proposed business.

The lease allowed the Stangs to occupy the premises immediately in order to proceed with repairs and renovations, and to pay only utilities until May 2012, when the Stangs anticipated they would begin operating the business. The first rent payment of $4,630.42 was due on May 1, 2012. The rental amount remained the same for the first 12 months of the lease and then increased each year for the next 5 years. As consideration for the tenants' agreement to install a heating, ventilation, and air conditioning (HVAC) system, the lease did not require a security deposit or prepaid rent.

The lease also divided responsibility between the landlord and tenants for certain improvements required to operate the tenants' business. Exhibit B of the lease designated seven items to be completed by Kennard. The major improvement Kennard agreed to undertake was the installation of a fire suppression sprinkler system meeting the requirements of local building codes and as required by the City of Bellingham in order to secure a certificate of occupancy. The Stangs could not open for business without first obtaining an occupancy permit. In addition to the fire suppression system, Kennard also agreed to remove rubbish and debris, pressure wash the building, repair doors, windows, and siding, and to install an access ramp.

Exhibit B also set forth eleven items for which the tenants were responsible. The Stangs agreed to install an HVAC system, kitchen, and bathrooms, to upgrade plumbing and wiring, to remove a shed and a fence, paint the building, install a new awning, and remodel the inside of the building. The lease did not include a deadline for completion of any projects but, according to Michael Stang, Kennard intended to complete the work before the projected opening in May 2012.

The Stangs took possession of the property upon signing the lease in February and immediately proceeded with improvements and modifications. Recognizing the importance of installing the fire suppression system right away, Kennard secured a bid and authorized the work to begin in March. It was not until August 3, however, that the system passed inspection and was fully complete.

Apart from the fire suppression sprinkler system, Kennard did not complete any of the items assigned to the landlord in Exhibit B. Kennard did, however, allow the Stangs to complete or arrange and pay for some of the work he was supposed to do. The items completed by the Stangs on behalf of the landlord included pressure washing, clean up, window repairs, and construction of an access ramp.

The Stangs did not pay rent, and Kennard did not demand rent, in May, June, July, or August. The City issued the occupancy permit the day that the fire suppression system passed inspection and the business opened the following day, on August 4. At the end of August, Kennard requested a meeting with Stacy

Stang to discuss rent. During that meeting, Stacy Stang presented invoices for work performed on behalf of Kennard, which totaled approximately $25,000, and requested reimbursement. Kennard objected to the amounts, refused to pay, and demanded overdue rent for May through August.

On September 10, 2012, Kennard sent the Stangs a 5-day notice to comply or quit the premises under a provision of the lease, seeking $25,855.70 in past due rent, fees, and interest. On September 20, Kennard mailed and posted a 3-day pay or vacate notice pursuant to RCW 59.12.030. On September 27, 2012 and on October 2, 2012 the Stangs mailed monthly rent checks to Kennard.[1]

Kennard filed a complaint for unlawful detainer in October 2012. The Stangs filed an answer, asserted affirmative defenses and a counterclaim for breach of contract, and sought equitable relief and attorney fees under the lease. The court set the matter for trial.

Michael Kennard, Stacy Stang and Michael Stang testified at trial. Kennard testified that he never told the Stangs that they would not be responsible for rent between May and August. However, he testified that because he saw that the Stangs were struggling to finish work on the building and "scrambling to get open," he "didn't hound them" for rent during that time. He also agreed that he owed money to the Stangs for work for which he was responsible but for which they had arranged and paid for, and admitted that, at

_____

[1] The Stangs tendered subsequent rent payments into the court registry.

4

some point, he told the Stangs that the "previous month's rent should more than cover" the cost of the work.

Stacy Stang testified that she had several conversations with Kennard during the summer of 2012 regarding the status of the fire suppression system and other work Kennard had agreed to do. Stacy Stang testified that she telephoned Kennard in May, specifically to express her concern that they could not obtain an occupancy permit and open for business until the fire suppression system was complete and operable. She said Kennard told her he was having trouble securing financing for the project, but not to "worry about rent" and that they would "settle up" later. According to the Stangs, Kennard assured them that rent would be deferred at least until the sprinkler system was complete.

Following trial, the court denied Kennard's request for a writ of restitution, concluding that he failed to meet his burden to establish default based on the nonpayment of rent. The court found that the parties made oral agreements between February and August 2012 that primarily concerned the Stangs' payment for repairs and improvements Kennard had previously agreed to perform and that the parties "intended their oral agreements for repair and improvement of the property to modify their respective financial obligations." The court found that the "[t]enants' duty to pay rent was modified by oral agreements made by the parties after the lease was executed." The court also determined that until late August 2012, the tenants "reasonably believed that Landlord would permit them to defer payment of any rent due for the months of May through

August 2012, after reduction of repairs and improvements Tenants had made, until the parties had agreed upon their respective financial responsibilities."

The court found that the "Plaintiff landlord is entitled to rent for the months of May through August 2012, and Tenant is entitled to compensation, in cash or as a set off to this rent, for the expenses incurred and the labor expended by Tenant in effecting the repair and improvements which were the subject of the parties' oral agreements." The court determined, however, that the evidence presented at trial was insufficient to determine the amount of rent owed to Kennard and reimbursement owed to the Stangs. The court encouraged the parties to reach agreement on that issue out of court, but also set a fixed date for the court to resolve the issue in case the parties were unable to do so. Also, having denied the writ of restitution, the court awarded attorney fees of approximately $16,300 to the Stangs under a provision of the lease which provides for attorney fees to the "prevailing party" in the event of litigation. Kennard appeals.

II

Kennard acknowledges that there was evidence to establish that (1) he agreed to reimburse the Stangs for improvements and repairs done on his behalf after all work was completed, and (2) he agreed to consider offsetting the amounts paid by the Stangs against one rental payment. However, Kennard contends there was no evidence of an agreement to defer the payment of rent. He contends that the Stangs' subjective expectation that they would be allowed to postpone payments and deduct amounts they expended in excess of one

6

month's rent is insufficient to demonstrate mutual intent. And, absent such an agreement to postpone and reduce the amount of rent, Kennard claims that the Stangs' defense was merely a counterclaim for damages, independent of their obligation under the lease to pay rent. Consequently, according to Kennard, the trial court lacked authority to consider the Stangs' defense within the narrow scope of the unlawful detainer proceeding. See Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985) (to protect the summary nature of unlawful detainer proceedings, other claims, including counterclaims, are generally not allowed unless an affirmative defense or setoff excuses the tenant's failure to pay rent).

Kennard's argument on appeal hinges on the evidentiary support for the trial court's finding that the parties agreed to modify provisions of the lease governing the tenants' payment of rent. We review the trial court's findings of fact for substantial evidence following a bench trial. Pardee v. Jolly, 163 Wn.2d 558, 566, 182 P.3d 967 (2008). Substantial evidence is "a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true." Pardee, 163 Wn.2d at 566. When substantial evidence exists, a reviewing court must not "substitute its judgment for that of the trial court." Pardee, 163 Wn.2d at 566. We defer to the trier of fact "[i]n evaluating the persuasiveness of the evidence and the credibility of witnesses." In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011).

Kennard maintains that the parties' agreement to "settle up" later extended only to amounts the Stangs paid for improvements. But Stacy Stang's testimony supports the court's determination that the parties' intent in agreeing to "settle up"

7

was to defer resolution of all financial issues until work was complete and the business was open, including the calculation of how much rent was owed after deducting the amounts Kennard owed to the Stangs. Stacy Stang described discussions with Kennard about the delay in the installation of the fire suppression system, the effect of that delay, and the outstanding invoices. In light of these issues, Stacy Stang said that Kennard agreed to "square it away later" on all accounts and specifically told her that no rent would be due before the sprinkler system was operational. While he denied expressly agreeing to modify the rent provisions of the lease, Kennard's conduct was consistent with such an agreement in that he admittedly did not demand any rent until after the business was operating. And Kennard admitted some amount of debt to the Stangs and informed them of his belief that waiving one month's rent would satisfy the debt.

Based on the testimony about the events that unfolded after the parties entered into the lease, the trial court determined that the parties modified the lease provisions pertaining to the responsibility for specific improvements and the payment of rent. Because substantial evidence in the record supports the court's finding, we reject Kennard's argument that the trial court lacked statutory authority to consider the Stangs' defense to the unlawful detainer action.

III

Relying on a provision of the unlawful detainer statute, RCW 59.12.170, and this court's decision in Indigo Real Estate Services, Inc. v. Wadsworth, 169 Wn. App. 412, 280 P.3d 506 (2012), Kennard contends that the trial court was

8

required and failed to calculate the amount of rent due. Neither authority supports his assertion.

RCW 59.12.170 pertains to the judgment entered by the court upon a finding that the tenant has unlawfully detained the premises. The statue provides, in pertinent part:

> If upon the trial . . . the finding of the court be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of a lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of the lease, agreement, or tenancy. . . . [T]he court . . . shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer . . . and, if the alleged unlawful detainer be after default in the payment of rent, find the amount of any rent due, and the judgment shall be rendered against the defendant . . . for twice the amount of damages thus assessed and of the rent, if any, found due.

RCW 59.12.170.

The statute does not apply. The trial court did not find in favor of the landlord, declined to restore possession to Kennard, and found that the tenants were not in default. In entering the judgment, the trial court was not, therefore, compelled by RCW 59.12.170 to calculate the amount of rent owed to the landlord.

Kennard's reliance on Indigo Real Estate is also unavailing. That case involved a tenant receiving a rent subsidy under the federally-funded section 8 program. Her tenancy was terminated by the landlord in an unlawful detainer proceeding without a determination of material noncompliance with the lease, which was required to terminate the lease under the rules governing the federal

housing program. We concluded that where a landlord has accepted the substantial financial benefits of the program, the landlord must abide by the rules of that program in any unlawful detainer action and our state's unlawful detainer statute is thus limited by those rules. Indigo Real Estate, 169 Wn. App. at 422-23. Because of its legal ruling that the provisions of section 8 were inapplicable, the trial court in Indigo Real Estate had declined to reach the issue of whether there was good cause to terminate the lease. We remanded for the trial court to resolve the outstanding factual issue. Indigo Real Estate, 169 Wn. App. at 426.

The facts of this case bear no resemblance to those in Indigo Real Estate. Moreover, the trial court herein did not decline to reach the issue of amounts owed between the parties. Rather, the court determined that the evidence presented in the unlawful detainer proceeding was sufficient to resolve the issue of possession, but insufficient to precisely calculate the amounts owed. The court set the issue over, encouraging the parties to negotiate and settle the matter, but also stated that the court would determine the respective financial obligations if the parties could not agree.

Kennard suggests that because the trial court failed to determine the amounts owed, it could not resolve the issue of default because the tenants would be in default if the offsets were less than the amount of outstanding rent. But even assuming this were the case and the Stangs still owed rent after deductions, this would not affect the court's determination of default because the court found that the parties agreed to postpone the payment of rent until the work

10

was finished and they reached agreement on the amount of reimbursement and rent, which they failed to do.

The trial court's findings are supported by the evidence. The trial court did not err by entering judgment on the unlawful detainer complaint without calculating rent. Nor did the court err by determining that the Stangs prevailed and awarding them attorney fees in accordance with the lease. The Stangs are also entitled under the lease to reasonable attorney fees on appeal. Upon compliance with RAP 18.1, a commissioner of this court will enter an appropriate order.

Affirmed.

We concur: