

**FILED**
**AUGUST 4, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPOKANE AIRPORT BOARD, | ) | |
| | ) | No.  36612-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXPERIMENTAL AIRCRAFT | ) | UNPUBLISHED OPINION |
| ASSOCIATION CHAPTER 79, a | ) | |
| Washington Nonprofit Corporation, and | ) | |
| ALL OTHER OCCUPANTS of 5829 E. | ) | |
| Rutter Avenue, (Felts Field Airport) | ) | |
| Building No. 7 Spokane, Washington, | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, J. — The Experimental Aircraft Association, Chapter 79 (EAA)

appeals the summary judgment determination in an unlawful detainer action that its

landlord was entitled to possession of an airport hangar that EAA had leased.  Under the

controlling decision in *FPA Crescent Associates, LLC v. Jamie's LLC*, 190 Wn. App.

666, 360 P.3d 934 (2015), the statutory basis for relief on which the landlord relied did

not apply.  We reverse the summary judgment and grant EAA's request for an award of

attorney fees on appeal.

FACTS AND PROCEDURAL BACKGROUND

EAA is an aeronautics group that "offer[s] facilities and training for aircraft construction, restoration, and flight training," "provide[s] scholarships, flights, and aeronautical instruction to local youth," and "sponsor[s] historic aircraft tour visits." Clerk's Papers (CP) at 417. In 2011, it signed a five year lease for an aircraft hangar, Building 7, at Felts Field Airport in Spokane. Its landlord, the Spokane Airport Board (Airport) is the governing body that operates Spokane International Airport, Felts Field Airport, and the Spokane International Airport Business Park. EAA's lease gave it an option to renew for an additional five-year term. In 2016, the parties executed an amendment to the lease agreement that extended the term to a date in 2021, "unless sooner terminated or canceled as herein provided." CP at 56. The amendment also modified the rent amount, but otherwise incorporated the terms of the original lease.

In November 2017, the Airport sent the then-president of EAA an e-mail saying it anticipated the Airport would terminate the parties' lease because Building 7 was going to be demolished to build a new hangar. The e-mail characterized the Airport as "excited" about a new space EAA would have the opportunity to lease, and proposed a meeting to discuss transitional arrangements because the new space would not be available when EAA vacated Building 7. CP at 455.

A few days later, the Airport's properties and contracts director mailed EAA a letter stating that the Airport was cancelling the parties' lease pursuant to its amended

article 1, which provided in part, "Either party may cancel this Agreement upon providing one hundred eighty (180) days advance written notice." CP at 56. It notified EAA that it would be required to vacate Building 7 "no later than May 29, 2018." CP at 60.

Thereafter, and through August 2018, representatives of the Airport and EAA communicated and met to explore new housing for EAA, and the Airport eventually provided EAA with a proposed replacement lease. As the original cancellation date of May 29 approached, the Airport notified EAA by letter that it wished to extend EAA's occupancy in Building 7 to June 30 and the cancellation of EAA's lease would now be effective on that date. On June 22, the Airport confirmed in a letter to EAA that it was extending the cancellation of the lease agreement again, and EAA would now be required to vacate Building 7 no later than July 31. In mid-July, the Airport notified EAA in a third letter that it was extending EAA's occupancy to August 17. This third letter informed EAA that it was required to vacate Building 7 no later than August 17 and it would be permitted to move its property into a portion of Building 17 before the end of August. The July letter included a draft version of a new lease for a portion of Building 17.

It became apparent over the following month that EAA and the Airport had different understandings of their rights and obligations under the 2011 lease and its amendment. Drafts of a replacement lease were provided by the Airport, but none was

3

accepted and signed by EAA. The Airport had agreed to move EAA's property to a portion of Building 17 but EAA delayed in returning an indemnity agreement the Airport requested as a condition of its assistance, and the Airport had to cancel its arrangements for the move when EAA failed to confirm agreement to the scheduling. The Airport then learned that EAA members were balking at moving at all.

When EAA did not vacate Building 7 by the Friday, August 17 deadline, the Airport filed a complaint for unlawful detainer against EAA the following Monday, August 20, and moved for a writ of restitution. It alleged that EAA was in unlawful detainer of the property "[p]ursuant to RCW 59.12.030(1)." CP at 11. It attached its letters cancelling the lease and extending the effective date of the cancellation. The trial court granted ex parte relief, entering both an order authorizing a writ of restitution and the writ itself.

EAA responded with a motion to stay the writ if it posted a $1,000 bond (the bond amount that had been required of the Airport), arguing the Airport had attempted to improperly and prematurely cancel the parties' lease in a manner not allowed by its terms. When the Airport asked that any stay be predicated on a $350,000 bond from EAA and the court settled on a $230,000 bond requirement, EAA relented and vacated Building 7 on or about August 27. It persisted in its position that the Airport had no right to evict it.

4

In September 2018, the Airport moved for summary judgment, seeking to establish that it had a right of possession and, on that basis, to recover double its damages and its attorney fees and costs occasioned by EAA's unlawful detainer. EAA opposed the motion and later filed its own motion for summary judgment. Among EAA's arguments were that read as a whole, the lease could only be cancelled or terminated for the causes identified in its article 23 and 24; because it lacked cause, the Airport had been proceeding under a "relocation" provision at article 38 of the lease, which the Airport then breached; and under this court's decision in *FPA Crescent*, the Airport had no right to proceed with an unlawful detainer action under RCW 59.12.030(1) because the fixed term of the lease had not expired.

The trial court granted the Airport's motion for summary judgment on the issue of the right to possession, but reserved issues of damages and attorney fees. EAA appeals.

ANALYSIS

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Grundy v. Thurston County*, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment is appropriate "if the pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The controlling issue here is the proper application of RCW 59.12.030(1). We review questions of law

de novo. *Indigo Real Estate Servs., Inc. v. Wadsworth*, 169 Wn. App. 412, 417, 280 P.3d 506 (2012).

The unlawful detainer action in chapter 59.12 RCW provides an expedited method for resolving the right to possession and hastening the recovery of real property. *McRae v. Way*, 64 Wn.2d 544, 546, 392 P.2d 827 (1964). "In such proceedings the superior court sits as a special statutory tribunal, limited to deciding the primary issue of right to possession together with the statutorily designated incidents thereto, i.e., restitution and rent or damages." *Id* (emphasis omitted).[1] Because the unlawful detainer statute is in derogation of common law, any ambiguities are strictly construed in favor of the tenant. *Hous. Auth. of City of Everett v. Terry*, 114 Wn.2d 558, 563, 789 P.2d 745 (1990).

This court's decision in *FPA Crescent* is controlling. In that case, the parties had entered into a commercial lease whose expiration date was in July 2021. 190 Wn. App. at 669. The lease defined the "lease term" as beginning on the commencement date and ending on the expiration date unless terminated sooner pursuant to the terms and conditions of the lease. *Id.* In the spring of 2014, the lessee fell behind in its payment of

---

[1] Where, as here, the right to possession ceases to be at issue, the action may be converted into an ordinary civil suit for damages and the parties may then properly assert cross claims, counterclaims, and affirmative defenses. *Castellon v. Rodriguez*, 4 Wn. App. 2d 8, 18, 418 P.3d 804 (2018) (citing *Munden v. Hazelrigg*, 105 Wn.2d 39, 45-46, 711 P.2d 295 (1985)). Because the trial court had taken no step to convert the Airport's unlawful detainer action to an ordinary civil suit, the summary judgment decision on possession was a final judgment, appealable as a matter of right under RAP 2.2(a)(1).

rent. *Id.* at 669-70. The parties' lease defined "default" as including a failure to pay rent when due, and authorized the lessor to terminate the lease in the event of default. *Id*. at 669. The lessor exercised its right to terminate the lease, giving notice of termination to the lessee. *Id.* Although the lessee tendered late payment, the lessor refused to accept it. *Id.* at 670.

The lessor then brought an unlawful detainer action, relying on RCW 59.12.030(1), which provides that "[a] tenant of real property for a term less than life is liable for unlawful detainer if:"

> (1) When he or she holds over or continues in possession, in person or by subtenant, of the property or any part thereof after *the expiration* of the term for which it is let to him or her. When real property is leased for a specified term or period by express or implied contract, whether written or oral, the tenancy shall be terminated without notice at the expiration of the specified term or period.

(Emphasis added.) The lessor argued that the lessee was a holdover tenant under subsection (1) in light of its early termination of the lease. The lessee disagreed; it argued that a lessee who continues in possession after an early termination of a lease is not a lessee who continues in possession "after *the expiration* of the term for which it is let."

This court agreed with the lessee. It held:

> RCW 59.12.030(1) has no application here because it applies only to tenants who continue in possession "after the expiration of the term for which [the property] is let." Even if we were not charged with construing ambiguities in the unlawful detainer act strictly in favor of tenants, we

would hold that this construction is required by the plain language of the statute. "Expiration" is defined in *Black's Law Dictionary* as "[t]he ending of a fixed period of time." BLACK'S LAW DICTIONARY 700 (10th ed. 2014). "Let" means "[t]o offer (property) for lease." *Id.* at 1043. Thus, under the plain language of the statute, a tenant is guilty of unlawful detainer if the tenant remains in possession of property past the fixed period of time for which the property is leased.

Thus, RCW 59.12.030(1) is applicable only after the expiration of the fixed term as specified in the lease agreement. Here, the lease contained a fixed term of 90 months with the option to extend for an additional fixed period. The initial 90 months had not expired prior to FPA's summons for unlawful detainer. FPA could not rely on RCW 59.12.030(1) to determine the right of possession.

*FPA Crescent* at 676-77 (alterations in original).

The facts of this case fall squarely within *FPA Crescent*'s textual analysis and holding. Amended article 1 of the Airport/EAA lease, like the lease in *FPA Crescent*, contained a fixed term of five years, subject to earlier termination or cancellation:

The term of this Agreement shall be five (5) years commencing March 1, 2016 and ending February 28, 2021 unless sooner terminated or canceled as herein provided. Either party may cancel this Agreement upon one hundred eighty (180) days advance written notice.

CP 56. At the time the Airport brought its unlawful detainer action the fixed term had not "expired" within the meaning we gave that statutory term in *FPA Crescent*. Rather, as in *FPA Crescent*, the parties' lease had come to an early end as the result of the Airport's exercise of a cancellation option. The option in this case was a mutual no-fault cancellation option rather than an option to terminate in the event of default. But under

8

the textual basis for the holding in *FPA Crescent*, the reason for a lawful early termination makes no difference.

The Airport argues that *FPA Crescent* only held that where a lessee failed to pay rent, lessors could not bypass the notice and opportunity to cure provisions of RCW 59.12.030(3) by terminating the lease and relying on the subsection (1) holdover provision. *FPA Crescent* makes that observation, but the pertinent question for this case is *why* this court held that the lessor could not rely on subsection (1). The principal holding of *FPA Crescent* is its construction of RCW 59.12.030(1) as applying only to lessees who hold over following the *expiration* of a fixed term, not to lessees who hold over after a term that has not expired but has been lawfully shortened by the exercise of a right of cancellation or termination. It was merely a consequence of our construction of subsection (1) in *FPA Crescent* that if a lessor wishes to sue for unlawful detainer after terminating an unexpired lease for nonpayment of rent, its only alternative is to comply with subsection (3).

Because EAA was not a holdover tenant within the meaning of subsection (1) of RCW 59.12.030 and the Airport identifies no other basis under that statute for its request for relief, the trial court lacked jurisdiction to decide the right to possession.

Both parties request an award of reasonable attorney fees and costs on appeal and agree that such fees and costs are recoverable by the prevailing party under article 26 of

9

their lease. We award reasonable fees and costs on appeal to EAA, subject to its timely compliance with RAP 18.1(d).

The trial court's order granting partial summary judgment is reversed. We remand to the trial court with directions to dismiss the unlawful detainer claim and for such other proceedings as are consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Fearing, J.