# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP COUNTY CONSOLIDATED HOUSING AUTHORITY dba HOUSING KITSAP, | No. 47696-7-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| KIMBRA HENRY-LEVINGSTON, | |
| Appellant. | |

MAXA, A.C.J. – Kimbra Henry-Levingston appeals the trial court's ruling that she was in unlawful detainer of her federally subsidized apartment. Kimbra[1] rented her apartment from Kitsap County Consolidated Housing Authority (known as "Housing Kitsap"), a public housing authority (PHA) that owns and manages subsidized housing. Housing Kitsap lawfully terminated Kimbra's lease effective at the end of the lease term because she violated certain lease provisions. Housing Kitsap then brought this unlawful detainer action under RCW 59.12.030(1), which allows a landlord to file an unlawful detainer action without providing an opportunity to cure against a "holdover" tenant who remains in leased premises after the lease term ends.

---

[1] During the relevant period prior to litigation, the appellant's name changed from Kimbra Henry to Kimbra Henry-Levingston. Both parties refer to her as Kimbra, and we do the same. We mean no disrespect.

Kimbra argues that a combination of federal public housing law and Washington unlawful detainer law required Housing Kitsap to give her an opportunity to cure her lease violations before filing an unlawful detainer action. She relies on 42 U.S.C. § 1437d(*l*)(1), which requires a PHA lease to automatically renew at the end of its term with one inapplicable exception. She claims that under this provision, her lease still renewed automatically even after Housing Kitsap terminated it. If Kimbra's lease renewed, RCW 59.12.030(4) would require Housing Kitsap to give Kimbra an opportunity to cure the lease violations before bringing an unlawful detainer during the lease term.

We hold that under 42 U.S.C. § 1437d(*l*), a lawfully terminated lease does not automatically renew at the end of its term. Therefore, because Housing Kitsap lawfully terminated Kimbra's lease, it could file an unlawful detainer action under RCW 59.12.030(1) once the lease term ended and was not required to give Kimbra an opportunity to cure her lease violations. We also hold that (1) federal law did not prevent Housing Kitsap from bringing its unlawful detainer action without additional notice, (2) Kimbra's eviction did not violate her due process and equal protection rights, and (3) Kimbra failed to challenge the timeliness of Housing Kitsap's unlawful detainer action in the trial court and cannot raise it for the first time on appeal.

Accordingly, we affirm the trial court's ruling that Kimbra was in unlawful detainer.

FACTS

*Signing the Lease*

On January 10, 2014, Kimbra signed a lease with Housing Kitsap to rent a federally subsidized apartment. Under the lease's provisions, Kimbra's tenancy began on January 10 and the initial term of the lease was 12 months. But the lease provided that "[t]he first month of the

2

lease shall be the calendar month during which [the] initial tenancy commences." Clerk's Papers (CP) at 327. Therefore, December 31, 2014 was listed as the end date. The lease further stated that the lease "shall automatically be renewed for successive terms of 12 months" unless modified or terminated in accordance with certain lease provisions or not renewed for noncompliance with statutorily required community service. CP at 327.

On the day of signing, Kimbra met with Megan Hastings, a Housing Kitsap employee, to review the lease terms. At that meeting, Kimbra was accompanied by the father of her three children, Gregory Levingston. Hastings asked Kimbra if Levingston would be living in the apartment, and Kimbra said that he would not be part of the household. Hastings told Kimbra that under the lease terms, Kimbra was required to inform Housing Kitsap of any changes to the household's income or composition.

*Breach and Termination*

In October, Hastings discovered that Kimbra and Levingston had married. The couple's marriage license listed Kimbra's subsidized apartment as Levingston's residence and a Housing Kitsap on-site employee told Hastings that he saw Levingston continuously at Kimbra's apartment complex.

Hastings requested that Levingston attend Kimbra's standard recertification meeting. At the meeting, Hastings asked Levingston to confirm that he had not been living at the Housing Kitsap apartment. While Levingston was pulling papers out of his wallet, Hastings saw a form indicating that Levingston was a registered sex offender. Housing Kitsap confirmed that Levingston was a registered sex offender and also discovered that Levingston had previously listed Kimbra's apartment as his address in his sex offender registration.

Shortly after the recertification meeting, Housing Kitsap gave Kimbra a 30-day notice that her lease was being terminated effective December 31, 2014. The notice stated that if Kimbra did not vacate the apartment by December 31, Housing Kitsap would bring an unlawful detainer action. The notice cited Levingston's residence at the apartment and Kimbra's failure to stay current on her utility bills and subsequent decision to transfer her utility account to Levingston as reasons for termination.[2] The notice did not offer Kimbra a chance to cure the alleged violations, but it informed her of her right under federal law to request a grievance hearing.

*Grievance Hearings*

Kimbra requested an informal grievance hearing on her termination notice and submitted letters from herself and other witnesses. A Housing Kitsap housing manager upheld the decision to terminate Kimbra's tenancy.

Kimbra then requested a formal grievance hearing, which was scheduled for December 16 before a hearing officer. The hearing officer considered documentation from Housing Kitsap and heard testimony from several witnesses. The hearing officer upheld the termination decision, concluding after reviewing all required policies and procedures in both the lease and the Department of Housing and Urban Development (HUD) regulations that Housing Kitsap could proceed with the termination of Kimbra's tenancy.

---

[2] The notice also alleged that Kimbra violated the lease by failing to submit a screening application before allowing her sister and sister's boyfriend to use the apartment to receive federal benefits. The trial court found that Housing Kitsap did not prove this allegation.

*Unlawful Detainer Lawsuit*

On January 9, 2015, Housing Kitsap filed a summons and complaint for unlawful detainer. The complaint alleged that Kimbra had remained unlawfully on the premises after her lease ended on December 31, 2014. Housing Kitsap obtained a show cause order requiring Kimbra to vacate the apartment.

Kimbra filed an answer in which she asserted affirmative defenses and moved to dismiss the complaint. She acknowledged that the initial term of the lease was from January 10 to December 31, 2014. But her affirmative defense stated that the lease terms and federal law required that her lease automatically renew. Kimbra also moved to dismiss on the ground that Housing Kitsap failed to allow her to cure her alleged lease violations as required by RCW 59.12.030(4). The trial court denied this motion and a subsequent motion for reconsideration.

After an expedited bench trial, the trial court ruled that Kimbra had in fact violated the terms of her lease. The trial court entering findings of fact that (1) Kimbra's lease expired on December 31, 2014 and would have automatically renewed if it had not been terminated for material breaches of the lease; (2) Kimbra violated the lease terms by improperly allowing Levingston to stay with her and failing to pay her utilities; (3) Housing Kitsap terminated Kimbra's lease under federal law by giving notice and an opportunity for a hearing; (4) because of the termination the lease did not renew and the lease and tenancy expired on December 31, 2014; and (5) on January 1, 2015 Kimbra was in unlawful detainer of the property. The trial court concluded that Housing Kitsap was entitled to possession and an award of reasonable attorney fees.

Kimbra appeals the trial court's decision.

ANALYSIS

Kimbra argues that under 42 U.S.C. § 1437d(*l*)(1), her lease renewed automatically even after Housing Kitsap terminated the lease. Therefore, she claims that Housing Kitsap had to file its unlawful detainer action under RCW 59.12.030(4), which requires that she be given an opportunity to cure. Housing Kitsap argues that because it lawfully terminated Kimbra's lease effective December 31, 2014, the lease ended on that date and it could file an unlawful detainer action under RCW 59.12.030(1) without giving Kimbra an opportunity to cure.

We hold that 42 U.S.C. § 1437d(*l*)(1)'s automatic renewal provision does not apply after a public housing lease has been lawfully terminated. Therefore, we hold that once a lease has been lawfully terminated for cause, a PHA may bring an unlawful detainer action under RCW 59.12.030(1) after the lease term ends without giving the tenant an opportunity to cure.

A.      LEGAL PRINCIPLES

1.   Standard of Review

The trial court entered findings of fact and conclusions of law following a bench trial. Kimbra does not assign error to the trial court's factual findings. Therefore, they are verities on appeal. *State v. Westvang*, 184 Wn. App. 1, 5, 335 P.3d 1024 (2014). But included in the trial court's findings of fact were "findings" that Housing Kitsap's termination of Kimbra's lease prevented it from automatically renewing. That determination was a legal conclusion that required the trial court to interpret the lease provisions and federal law. We review legal conclusions de novo, even if denominated as findings of fact. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 43, 59 P.3d 611 (2002).

2.  Federal Public Housing Law

The terms of PHA lease agreements are dictated by federal statute, specifically 42 U.S.C. § 1437d, as well as HUD regulations. Relevant here, 42 U.S.C. § 1437d(*l*)(1) states that PHAs "shall utilize" public housing leases that "have a term of 12 months and shall be automatically renewed for all purposes except for noncompliance with the requirements [relating to community service]."[3]

Other provisions of 42 U.S.C. § 1437d(*l*) govern the termination of leases. Under subsection (5), public housing leases must provide that PHAs "may not terminate the tenancy *except for* serious or repeated violation of the terms or conditions of the lease or for other good cause." 42 U.S.C. § 1437d(*l*)(5) (emphasis added). Serious or repeated violations of a lease's terms may include, for example, "provid[ing] accommodations for boarders or lodgers" or allowing the dwelling to be used by people other than "solely . . . the tenant and the tenant's household as identified in the lease." 24 C.F.R. § 966.4(f)(2), (3). Other subsections of 42 U.S.C. § 1437d(*l*) provide that PHAs may terminate leases on other specific grounds. 42 U.S.C. § 1437d(*l*)(6), (7),[4] (9).

Public housing leases also must require that PHAs give "adequate written notice" of lease termination, which usually means a 30-day notice. 42 U.S.C. § 1437d(*l*)(4). And 42 U.S.C. § 1437d(k) states that HUD shall establish and implement an administrative grievance procedure,

_____

[3] Public housing tenants must comply with certain community service requirements set out in 42 U.S.C. § 1437j(c). Those requirements are not at issue here.

[4] 42 U.S.C. § 1437d(*l*) has two (7) subsections. This cite refers to the second of the two.

under which a tenant has an opportunity for a hearing before an impartial party for any proposed

adverse PHA action. *See also* 24 C.F.R. § 966.51 (establishing a grievance process).

A PHA cannot terminate a public housing lease without complying with the requirements

of federal law. *Hous. Auth. v. Bin*, 163 Wn. App. 367, 371, 260 P.3d 900 (2011).

   3. Washington Unlawful Detainer Law

"An unlawful detainer action is a statutorily created proceeding that provides an

expedited method of resolving the right to possession of property." *Christensen v. Ellsworth*,

162 Wn.2d 365, 370-71, 173 P.3d 228 (2007). The unlawful detainer statute, RCW 59.12.030 et

seq., created a summary proceeding that was an alternative to an ejectment action. *Angelo Prop.*

*Co. v. Hafiz*, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012). A statutory unlawful detainer

action "relieves a landlord of having to file an expensive and lengthy common law action of

ejectment." *FPA Crescent Assocs. v. Jamie's LLC*, 190 Wn. App. 666, 675, 360 P.3d 934

(2015). Any ambiguities in the unlawful detainer statute are strictly construed in the tenant's

favor. *Id.*

A tenant can be guilty of unlawful detainer under RCW 59.12.030 in seven different

ways. Two alternative ways are relevant here.

First, under RCW 59.12.030(1) a landlord can file an unlawful detainer action when a

lease term has ended without satisfying any other requirements. A tenant is guilty of unlawful

detainer under this subsection "[w]hen he or she holds over or continues in possession . . . of the

property . . . after the expiration of the term for which it is let to him or her." RCW

59.12.030(1). The statute further provides that when property is leased for a "specified term" by

contract, "the tenancy shall be terminated without notice at the expiration of the specified term."

RCW 59.12.030(1); *see also FPA Crescent Assocs.*, 190 Wn. App. at 677 (allowing an unlawful

detainer action "only after the expiration of the fixed term as specified in the lease agreement").

Second, under RCW 59.12.030(4) a landlord can file an unlawful detainer action before

the end of the lease term only if the tenant has been given the opportunity to cure any lease

violations. *See Sullivan v. Purvis*, 90 Wn. App. 456, 459-60, 966 P.2d 912 (1998) (requiring

strict compliance with statutory notice requirements). A tenant is guilty of unlawful detainer

under this subsection after he or she fails to perform any lease covenant or condition (other than

payment of rent) and receives written notice "requiring in the alternative the performance of such

condition or covenant or the surrender of the property" if the tenant does not comply within 10

days of service. RCW 59.12.030(4). The statute provides that within 10 days of notice the

tenant "may perform such condition or covenant and thereby save the lease from such

forfeiture." RCW 59.12.030(4).

A trial court cannot grant relief in an unlawful detainer action when a landlord has failed

to comply with the relevant subsection of RCW 59.12.030. *See Hous. Auth. v. Terry*, 114 Wn.2d

558, 563-64, 789 P.2d 745 (1990). Such noncompliance prevents the trial court from exercising

its jurisdiction. *Christensen*, 162 Wn.2d at 372.

4.    Requirements for Public Housing Evictions

As discussed above, 42 U.S.C. § 1437d(*l*) provides for termination of public housing

leases under certain circumstances and with certain procedural safeguards. But federal law does

not contain any eviction provisions. In *Terry*, the Supreme Court held that if a PHA uses

Washington's unlawful detainer procedure to evict a public housing tenant, it must comply with

the appropriate state statutory procedural requirements. 114 Wn.2d at 566-69. In other words, a

PHA must comply with both federal law and Washington unlawful detainer law to evict a public housing tenant. *See id.* at 568-69.

Kimbra does not contest that her lease was lawfully terminated under federal law. Both the hearing officer and the trial court concluded that the termination was lawful. The question here is which subsection of RCW 59.12.030 applies to Housing Kitsap's unlawful detainer action. If RCW 59.12.030(1) applies, Housing Kitsap was not required to give Kimbra an opportunity to cure her lease violations. If RCW 59.12.030(4) applies, it is undisputed that Housing Kitsap did not comply with its notice and opportunity to cure requirements.

B.      APPLICATION OF RCW 59.12.030(1)

Whether RCW 59.12.030(1) or RCW 59.12.030(4) applies here depends on whether Kimbra's lease expired when the lease term ended (because of Housing Kitsap's termination) or the lease renewed automatically at the end of its term despite termination. To determine this issue, we must interpret 42 U.S.C. § 1437d(*l*)(1). Considering the statutory scheme as a whole and interpreting the statute to avoid absurd results, we hold that a public housing lease that has been lawfully terminated does not automatically renew and expires at the end of its specified term. Here, Housing Kitsap lawfully terminated Kimbra's lease effective December 31, 2014. Therefore, we hold that Kimbra's lease expired on that date and that Housing Kitsap could file an unlawful detainer action under RCW 59.12.030(1) without notice or an opportunity to cure.

1.    Statutory Interpretation

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The objective in interpreting a federal statute is to ascertain Congress's intent. *First-Citizens Bank & Trust Co. v. Harrison*, 181 Wn. App. 595,

602, 326 P.3d 808, *review denied*, 181 Wn.2d 1015 (2014). To determine legislative intent, we first look to the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). We also may consider dictionary definitions of undefined statutory terms. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

If a statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. *Jametsky*, 179 Wn.2d at 762. If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Id.* We resolve ambiguity by considering other indications of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

We will interpret statutory language in a way that avoids an absurd or unlikely result. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). In limited situations, we will interpret language to avoid an absurd result "even if [we] must disregard *unambiguous* statutory language to do so." *In re Dependency of D.L.B.*, 186 Wn.2d 103, 119, 376 P.3d 1099 (2016). The purpose of this canon of construction is "to prevent obviously inept wording from thwarting clear legislative intent." *Id.*

2. Specified Term of PHA Lease

Initially, Kimbra argues that RCW 59.12.030(1) is inapplicable because her lease did not have a specified term. RCW 59.12.030(1) applies if the tenant holds over after expiration of the lease term. Kimbra claims that because under 42 U.S.C. § 1437d(*l*)(1) public housing leases renew automatically, her lease had an indefinite term that never expired.

11

However, this argument is inconsistent with the plain statutory language. The plain language of 42 U.S.C. § 1437d(*l*)(1) mandates that PHA leases "have a term of 12 months." This language clearly provides for a specified term. We interpret statutes to give effect to all the language used and without rendering any portion meaningless. *Veit v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 113, 249 P.3d 607 (2011). Interpreting 42 U.S.C. § 1437d(*l*)(1) as stating that PHA leases have indefinite terms would render the phrase "have a term of 12 months" superfluous.

Kimbra relies on *FPA Crescent*, where the landlord terminated a lease for failure to pay rent in 2014 even though the lease's expiration date was in 2021. 190 Wn. App. at 669. The landlord argued that once the lease was terminated, the lease term expired. *Id.* at 676. Division Three of this court disagreed, distinguishing expiration of the lease term from a landlord's unilateral lease termination before the specified term ended. *Id.* The court held that the landlord could not file an unlawful detainer action under RCW 59.12.030(1) when the landlord unilaterally terminated the lease before the end of the lease term. *Id.*

But unlike in *FPA Crescent*, Housing Kitsap did not terminate the lease before the end of the specified lease term. As stated above, the term of Kimbra's lease expired on December 31, 2014. Housing Kitsap's termination letter indicated that Kimbra's lease was terminated on that date.

We hold that Kimbra's lease had a specified term that expired on December 31, 2014, unless it automatically renewed as discussed below.

3. Automatic Renewal

Kimbra argues that RCW 59.12.030(1) is inapplicable because her lease term did not expire on December 31, 2014, but instead automatically renewed as required in 42 U.S.C. § 1437d(*l*)(1). Focusing only on the text of 42 U.S.C. § 1437d(*l*)(1), the statutory language is consistent with Kimbra's claim that her lease renewed automatically even though it had been terminated. 42 U.S.C. § 1437d(*l*)(1) states that PHAs must utilize public housing leases that "shall be automatically renewed for all purposes except for noncompliance with the requirements [relating to community service]." The automatic renewal subsection does not list an exception for termination of the lease, as allowed under other subsections of 42 U.S.C. § 1437d(*l*).

However, when determining the plain language of a statute, we consider not only the text of the provision at issue but also the context of the provision, related provisions, and the statutory scheme as a whole. *Gray*, 181 Wn.2d at 339. This principle means that we cannot interpret subsection (1) in isolation from the other subsections of 42 U.S.C. § 1437d(*l*). Subsection (5) states that public housing leases must require that a PHA "not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause." This provision clearly establishes that PHAs *can* terminate a tenancy for violation of lease provisions or other good cause. And other subsections allow termination on additional grounds. Therefore, 42 U.S.C. § 1437d(*l*) provides for both automatic renewal and termination for cause before the end of the term of public housing leases.

Considered as a whole, 42 U.S.C. § 1437d(*l*) treats automatic renewal and termination as alternatives. Although the language could be clearer, it is reasonable to interpret the statute as allowing either termination for cause or automatic renewal if the lease has not been terminated.

13

This interpretation is consistent with dictionary definitions of "terminate" and "renew." "Terminate" means "to bring to an ending or cessation in time, sequence, or continuity" or "to end formally and definitely." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2359 (2002). The dictionary defines "renew" as "to make new again." *Id.* at 1922. A lease that has "ended definitely" no longer exists and cannot logically be "made new again." Under this interpretation, a lease that has been terminated could not automatically renew.

Further, we interpret statutory language in a way that avoids an absurd result. *Five Corners*, 173 Wn.2d at 311. It simply makes no sense to hold that a lease that has been lawfully terminated can automatically renew.

We hold that under 42 U.S.C. § 1437d(*l*), Housing Kitsap's lawful termination of Kimbra's lease prevented the lease from automatically renewing. Therefore, we hold that Housing Kitsap could file an unlawful detainer action without notice or an opportunity to cure under RCW 59.12.030(1).

C.    CHALLENGES TO RCW 59.12.030(1) UNLAWFUL DETAINER

Kimbra argues that even if RCW 59.12.030(1) applies, Housing Kitsap's filing of an unlawful detainer action without notice violated notice provisions of federal law, violated her due process and equal protection rights, and was premature. We reject these arguments.

1.    Required Notice under Federal Law

Kimbra relies on federal regulations addressing eviction in arguing that Housing Kitsap violated federal law. Under 24 C.F.R. § 966.6(d), PHAs cannot include in their leases any provisions allowing the PHA to "institute suit without any notice . . . thus preventing the tenant from defending against the lawsuit." Under 24 C.F.R. § 966.6(e), PHAs cannot include in their

leases any provisions allowing the PHA to "evict the tenant . . . whenever the landlord determines that a breach or default has occurred without notice to the tenant or any determination by a court of the rights and liabilities of the parties." Kimbra argues that these regulations require a PHA to give notice before filing an unlawful detainer action even though RCW 59.12.030(1) does not require such notice.

However, 24 C.F.R. § 966.6 applies only to "leases between a PHA and a tenant," and subsections (d) and (e) simply prohibit a PHA from including certain provisions in a public housing lease. And Kimbra does not argue that Housing Kitsap's lease contains either of the prohibited provisions.

Because the terms of 24 C.F.R. § 966.6 apply only to Kimbra's lease and not to RCW 59.12.030(1), we hold that Housing Kitsap did not violate federal law in filing an unlawful detainer action under RCW 59.12.030(1) without additional notice.

2.    Constitutional Claims

Kimbra argues that her eviction without an opportunity to cure the grounds for terminating her lease violated both her due process and equal protection rights. We disagree.

A PHA is a state actor for purposes of the Fourteenth Amendment to the United States Constitution. *Hous. Auth. v. Saylors*, 19 Wn. App. 871, 873, 578 P.2d 76 (1978). Therefore, Housing Kitsap is subject to constitutional provisions. But Housing Kitsap did not violate Kimbra's constitutional rights.

a.    Due Process

Kimbra argues that Housing Kitsap violated due process in terminating her lease and evicting her. "Procedural due process prohibits the State from depriving an individual of

15

protected liberty interests without appropriate procedural safeguards. At its core, procedural due process is a right to be meaningfully heard." *In re Det. of Johnson*, 179 Wn. App. 579, 587-88, 322 P.3d 22 (citation omitted), *review denied*, 181 Wn.2d 1005 (2014). Consistent with due process requirements, a PHA must adhere to "elementary standards of fairness" before evicting public housing tenants, including notice and a full adversary hearing. *Saylors*, 19 Wn. App. at 873. These standards of fairness include complying with federal regulations and a PHA's own grievance procedures. *Bin*, 163 Wn. App. at 371.

Here, before her eviction Kimbra received notice of the grounds for terminating her lease and had an opportunity to argue her case in a formal hearing before a neutral decision maker. This procedure complied with the notice and hearing requirements of procedural due process. Kimbra cites no authority for her claim that due process includes an opportunity for a public housing tenant to cure a lease violation before being evicted. We hold that Housing Kitsap's termination of Kimbra's lease and eviction did not violate due process.

b. Equal Protection

Kimbra also argues that her eviction under RCW 59.12.030(1) rather than RCW 59.12.030(4) violates equal protection guarantees in the Fourteenth Amendment and article I, section 12 of the Washington Constitution. She claims that tenants who receive notices of termination near the end of their leases are treated differently than tenants who receive notices of termination in the middle of the leases. For the former group, a landlord can wait until the lease expires and bring an unlawful detainer action without giving an opportunity to cure under RCW 59.12.030(1). For the latter group, the landlord must give an opportunity to cure before bringing an unlawful detainer action under RCW 59.12.030(4).

16

But Kimbra does not explain why application of the two subsections violates equal protection. And she cites no authority to support her equal protection argument. We will not consider arguments for which a party has not cited legal authority. *Johnson Forestry Contracting, Inc. v. Dep't of Nat. Res.*, 131 Wn. App. 13, 25, 126 P.3d 45 (2005). " '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " *Crystal Ridge Homeowners' Ass'n v. City of Bothel*, 182 Wn.2d 665, 679, 343 P.3d 746 (2015) (alteration in original) (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). We reject Kimbra's equal protection argument.

3.  Premature Filing of Unlawful Detainer Action

Kimbra argues that even if her lease did not automatically renew after it was terminated and RCW 59.12.030(1) applies, Housing Kitsap's January 9, 2015 unlawful detainer action was premature. As noted above, 42 U.S.C. § 1437d(*l*)(1) requires that PHA leases have a term of 12 months. Kimbra claims that because her lease did not start until January 10, 2014, her lease expired on January 9, 2015 rather than on December 31, 2014 and therefore Housing Kitsap could not bring an unlawful detainer action until January 10.

But Kimbra did not argue in the trial court that the unlawful detainer action was premature. We generally do not consider issues raised for the first time on appeal. RAP 2.5(a); *Rash v. Providence Health & Servs.*, 183 Wn. App. 612, 625, 334 P.3d 1154 (2014), *review denied*, 182 Wn.2d 1028 (2015). This rule encourages full development of issues before the trial court and helps preserve judicial economy. *Id.*

Here, Kimbra not only failed to argue in the trial court that her lease expired on January 9, 2015, she affirmatively agreed that her lease term expired on December 31, 2014. In her

17

answer to Housing Kitsap's unlawful detainer action she acknowledged that the initial term of the lease was from January 10, 2014 to December 31, 2014. During oral argument, she stated that the lease term was set to expire on December 31, 2014. Therefore, the trial court clearly had no opportunity to address whether Kimbra's lease should have ended on January 9, 2015.

In addition, Kimbra did not assign error to the trial court's finding that the lease term ended on December 31, 2014. And Kimbra offers no argument as to why we should consider this issue for the first time on appeal.

We decline to consider Kimbra's argument, raised for the first time on appeal, that Housing Kitsap's unlawful detainer lawsuit was premature.

D.     ATTORNEY FEES

Both parties claim entitlement to attorney fees under RCW 59.18.290(2) and a provision in their lease. "A prevailing party may recover attorney fees only if provided by statute, agreement, or equitable principles." *Tacoma Northpark, L.L.C. v. NW, L.L.C.*, 123 Wn. App. 73, 84, 96 P.3d 454 (2004). The parties agree that the prevailing party on appeal is entitled to attorney fees. Therefore, we award attorney fees to Housing Kitsap as the prevailing party in this appeal.

## CONCLUSION

We hold that under 42 U.S.C. § 1437d(*l*), Kimbra's lease did not automatically renew at the end of the lease term because Housing Kitsap had lawfully terminated the lease. Therefore, Kimbra became a holdover tenant and Housing Kitsap could bring an unlawful detainer action under RCW 59.12.030(1) once the lease term ended without providing notice or an opportunity to cure.

We affirm the trial court's ruling that Kimbra was in unlawful detainer.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, J.